Thank you, Your Honors, and may it please the Court. Peter Afrasiabi on behalf of the appellants. Your Honors, there are two issues here, the prevailing party issue and the substantial justification issue. They both really are quite narrow. On the prevailing party issue, the relevant legal test, which the district court got wrong, is whether there has been a material change in the party's relationship as a result of a court-ordered agreement or whether there was just that such material alteration. And this Court's case law following the Supreme Court case law amply demonstrates why. Before we received that stipulated stay, the party's positions were as follows. My client, who had an inabstantial order of deportation issued against him, had a pending Fifth Amendment case in immigration courts, was on the verge of being placed on an airplane despite the pending case. The government said they had the right to do it, and they were proceeding to do it. Until we got that stay from the government, my client could have been placed on a plane and had he been placed on a plane, his case would have been dismissed as moot. He could not return to this country for ten years, even though his wife and daughter were lawful permanent residents. That stay was a whole ballgame in effect. And the government eventually agreed to that stay. And when they did and the court signed that stipulation, that had sufficient judicial informature on the situation to render my client a prevailing party. Had the government breached at that point, we could have gone in on contempt sanctions, we could have filed a breach of contract action, and had a panoply of remedies available to us. Until we got that stay, my client was at risk. Labotest, Fisher, Barrios, the cases from this Court, all are on point. They talk about agreements, settlement agreements, consent decrees. The label you affix to it doesn't matter. And the government's attempt here to call this a voluntary agreement as if it's not a consent decree or a settlement agreement simply isn't fair and isn't right. The caption of the agreement shouldn't control the substance of it should, and that's what all the cases of this Court look to, including the Perez case, which the government relies on. And I fall on the sword and apologize to the Court for not addressing this case, so I very briefly will. It was a case where the court order didn't secure any relief for the party. So it was quite right there that the party was not deemed a prevailing party. He simply secured a stay and went and filed a new application and got relief. Let me quickly now move to the substantial justification issue. This issue was fully briefed to the district court. The district court, as we pointed out in our opening brief, didn't rule on this ground. The government, however, in their opposition brief, teed up this issue and put this issue before this Court to decide. We're fine having this Court decide the issue. It's an undisputed factual record. More delay in sending it back doesn't make any sense, and we would submit to, as the government has argued, this Court should call it. And quite frankly, on this record, there's only one way to call it, and that is that the government's position was not substantially justified for three or four independent reasons. Number one, at the outset of this case — Didn't you request that we remand that issue to the agency or to the — was it to the district court? Yeah. Yeah. In our opening brief, we only addressed the prevailing party issue and indicated that, you know, we would — More than addressing it, didn't you suggest that the remedy would be to remand the second issue? Exactly, Your Honor. And then the government, in their opposition brief, raised the issue and wanted it addressed on the merits. So in our reply brief, we asserted it should either be remanded or this Court could adjudicate it on the undisputed record. Either — we are fine with either way, to be honest. But since the government wanted it, teed it up and wanted it addressed, we're happy to have it addressed also. Well, sometimes parties are happy to have issues addressed, but the question is what's the appropriate thing for the Court to do. I think the Court can address it because it's an undisputed factual record. There are no factual findings that have to be made really here. The facts are what they are. What happened is what happened. It's been fully briefed. The parties each had an opportunity to address it, and it's something that's here and it would save significant reason. Well, the review of the issue is an abusive discretion review of a district court's determination. That's correct, Your Honor. And the district court hasn't made a determination. But you say we have the option we could do either one, right? I think you can, Your Honor, because the facts are undisputed, so the conclusion is just the conclusion that you draw from this record. Of course, if the Court doesn't want to address it, it can send it back. We are in agreement with the government to the extent the government wants it addressed here that it saves judicial resources and time on remanding a case, especially given the factual record, which is one where on day one, actually day minus one, I offered the government all the briefs that I was going to file. I put them on notice, including the attorneys at the DOJ back east of this dire situation what was going to happen, and I asked simply, don't deport him. Let him have his day in court in the immigration court. They refused. And it's undisputed in this record that it's a common practice of deporting people with pending cases, and that's the Judy London Declaration. This does happen and it happens frequently. Here we had someone who they wanted to deport despite the pending case, despite the situation of his wife and daughter, and despite the fact that under Padilla-Augustine of this court's opinion, he had a constitutional right to present his appeal. They still wanted to deport him at every step of the way, and made it clear to the district court that there was no emergency to hear the TRO, but they were going to deport him as soon as they could, even to the point that when the district court said come back within seven days of deportation, I got in touch with the U.S. court and said, I understand that you don't get a seven-day notice on deportation. I asked, will you at least give me seven days' notice so I can go back to the district judge for TRO? No, was the answer. And then they filed a motion to dismiss, which the district court properly found was meritless, and indeed, they took completely disingenuous positions. So I think on this record, there's just no basis to conclude that their position was substantially justified, that this Court's going to address that issue. And unless the Court has any more questions, I would submit and save the balance of my time. Thank you, Your Honor. Thank you. May it please the Court, Assistant United States Attorney Frank Travieso, on behalf of Defendant Appellees. First and foremost, I would like to address a specific issue that was raised by opposing counsel. Until March 26, 2003, there was a stay issued by this Court, in fact, which prohibited, prevented INS from deporting Mr. Carbonell. The mandate did not issue until March 26, 2003. Therefore, when the first two applications for stay were issued, they were unnecessary. INS did not issue them. In Perez-Arellano, this Court decided the issue presented in this case. Consistent with the Supreme Court's decision in Buckhannon, Perez-Arellano held that prevailing party status and recovery of EJIA fees is limited to very specific circumstances. Specifically, according to this Court, a prevailing party under EJIA must be one who has gained by judgment or consent degree a material alteration of the legal relationship of the parties. Perez-Arellano applies in this case. There is no reason to disrupt this Court's precedent in Perez-Arellano. The central issue here is whether the Carbonells are prevailing parties under EJIA and entitled to fees based solely on the INS's stipulation not to deport Abraham Carbonell for a period of 45 days. The District Court concluded that they did not meet the standard as set out in Buckhannon and Perez-Arellano. The District Court did not abuse its discretion in reaching this decision and should be affirmed. In Perez-Arellano, they have a footnote which talks about barriers, and barriers is a case in which we held that an enforceable settlement agreement was enough. And Perez-Arellano could not overrule barriers. So it has to be read consistently with barriers. And they say in the footnote that in barriers we recently addressed the relationship between an enforceable settlement agreement and prevailing party status for statutory attorney's fees award purposes. And we did, and we held it was necessary. And in this case, we need not address whether he would qualify for prevailing party status under that theory. So they did not say that you could not qualify if you merely had a settlement agreement. They recognized that we said that and said that we don't have to address that circumstance, because they couldn't have addressed it. They couldn't have overruled it. So isn't the law what's set forth in barriers? Well, Your Honor, I would first note that barriers was decided before Buckhannon. And I would also submit – actually, I'm sorry. I correct myself. It was decided after Buckhannon. But I would submit that what we have here, Your Honor, is not a judicially enforceable settlement agreement. We have, as in Perez-Arellano, an agreement between the parties to basically hold the case in abeyance until the administrative process could come to a conclusion. Well, we have more than a settlement agreement here. We have a stipulation with a court order. We have a court-approved stipulation. Why isn't that the equivalent of a consent decree? Well, because, Your Honor, I believe a consent decree, which really is a term of art and goes beyond the – what was agreed to here. I said the equivalent of. It's obviously not a consent decree. I understand. I believe, Your Honor, that in the case of a consent decree – excuse me – we have a situation where the parties have reached some conclusion as to the merits of the underlying action. The court has entered an order which can then – permits the court to go in and enforce that agreement where there would be some kind of breach. What we have here, Your Honor, is basically the case was held in abeyance so that the administrative process – You have a court-approved stipulation. What happens if the government violates it? Well, I believe that what could have happened would have been for the Carbonells to go back and seek sanctions. So there's a court-approved order that you would be violating. I don't believe, Your Honor, that it's the kind of order envisioned in Buckhannon or in Perez-Arellano as a final judgment on the merits. What we have here is a – an agreement to permit the parties to try to resolve the issues on their own without further court intervention. Well, the issue was whether you could deport them during – before you made your final decision. Wasn't that the reason for their losses? Well, Your Honor, I think that – I really believe that in the papers before this Court, the requests made by the Carbonells are oversimplified. If you look at the petition that was filed in the district court, what was really being sought was for the district court to overturn that deportation order to permit Mr. Carbonell to pursue his adjustment of status application. This is precisely what the capital – What's the difference between saying you can't enforce the order until you decide the other one and overturning a deportation order pending the decision on the other case? Well, but the deportation order was never overturned. But it couldn't be enforced. It was suspended. It was suspended for a period of 45 days. No. It was basically, as in Perez-Arellano, the case was held in abeyance. The parties agreed on – They all they wanted was not to be deported until you decided his adjustment of status, sir. Again, I think that's an oversimplification of the relief that was sought before the district court. What was really sought – I don't believe that a party can go into a district court and just say stay my deportation without any underlying – this Court is aware that for a TRO to issue, for a restraining order to issue, there has to be a probability of success on the merits. If you just go in to the district court and say, please stay my deportation, I have no merits, but I just want my deportation stayed so that I can pursue my administrative remedies, it's not the kind of case that Buchanan envisioned. No. But when the government stipulated and it became an enforceable order, it may have changed the – materially changed the relationships of the parties just on the basis of the analysis you've just given. Well, but there was still a valid deportation order. Right. But let's assume that the INS had deported him in violation of the order. What would the remedies have been? Sanctions. So you just fine him? I mean, this was a transitional rules case, I gather. This was a pre-arrera case. So deportation would have meant that the case was moot. In the BIA. Yes. So they could have mooted the case by – and you're suggesting that all they could do is fine, seek a fine against the INS? Well, but in fact, again, Your Honor, I remind the Court that until March 26, 2003, there was a stay in place. Yes, I understand that. But my question is of the remedy. You think the only remedy would have been sanctions? Well, then there would have been some further litigation in the district court to determine whether or not that deportation order was unlawful, unconstitutional. Right. There was no showing that the deportation order was unconstitutional and was not executable. Well, the question is, though, was the district court stay order legally enforceable? And your answer seems to be no, but it would only rise to a contempt or a sanction remedy, and it could not – there would be no remedy to reverse the deportation order. Is that what you're really saying? Well, of course, if this Court were to follow Zegarra-Gomez and consider there to be continuing effects of the deportation order, then the fact that he had already filed his He would have permitted – he could have still litigated the constitutional – whether there was a constitutional violation in the district court in the entry of the deportation order. It would have put it out there. I think under Priorero law, that may not be correct, but somewhat beside the point in the sense of this. I mean, I gather what you're really saying, though, is that you don't think that the in this stay order if the INS had tried to deport him in violation of the stay order? I believe that they could have gone into the district court and said, we want sanctions and we want him brought back because the deportation order itself was unlawful. But then it would have been for the district court to determine the lawfulness of that deportation order. As opposed to just saying, you violated my stay order? Correct. In terms of substantial justification, I would just like to point out that, in fact, once the BIA ruled on the motion to reconsider, once administrative remedies were exhausted, the case went away. And therefore, although the district court ruled against the INS on the motion to dismiss, in fact, I believe it was a valid position for the government to propose in its motion to dismiss. And it was substantially justified. I believe I'm running out of time. And unless there are other questions, I would submit. Thank you, counsel. Thank you, Your Honor. Thank you. Let me address two of those points briefly. The district court found the government's position to be disingenuous. The government told the district court that he doesn't have a habeas claim, even though he's in custody and his Fifth Amendment rights have been violated, and we're not ruling on the claim, but we want to deport him to moot his case. He needs to go exhaust and take it to the administrative court. That was the point of the lawsuit. That's all we wanted to do, was have our day in administrative court. They also told the district judge that you cannot sue the United States government in its official capacity to seek injunctive relief, a facially meritless position. The entire ballgame here was the stay. Of course, other relief was also asked for in the complaint. My client was in custody. We asserted an APA claim for unreasonable delay in ruling on the underlying motion when they had already decided that it was sufficiently meritless to deny a stay. That was the whole ballgame, and of course it was enforceable. This was a court-ordered agreement that a lawyer for the United States government and I signed, binding ourselves under Rule 11, and the court would certainly have jurisdiction to address that if they breached it. And that was the whole ballgame, and that's all we needed. And the 45 days was given because it was expected that the BIA would rule within 45 days, and if it didn't, it would just recycle for another 45 days. We would submit, Your Honor, that what this case was about was winning at any and all costs for the government, as opposed to following the mandate of the Department of Justice of ensuring fair and impartial administration of justice for all. That's what this was about. I must say I'm not quite clear, and never have been, about what happens while you're trying to get an adjustment of status and the government wants to deport you. It seems to me that's not unusual that the government does take the position still, generally, that they are free to deport while you're going through the adjustment of status process. Is there authority that shows that they are not free to deport you while adjustment of status is being litigated? Administratively? The Padilla-Augustine case is the case we cited to the district court primarily. It's an opinion from this Court holding that you have a constitutional right to present your appeal. That, coupled with the fact that the regs give you a right to file a motion to reconsider, which necessarily encompasses within it the right to have that motion decided, we would assert as a matter of basic due process. The other two habeas cases we cited to the district court were Derringer and Sziligayi, S-Z-I-L-G-A-Y-I, which stood for the proposition that when you're in custody and you have an inabstantial order of deportation that's been issued against you, you have a cognizable habeas claim to have that inabstantial order undone. And that was the basis for the TRO and the complaint. And, indeed, when the government stipulated to this day and the BIA here granted the motion to reconsider, they no longer could deport because the order of deportation was now vacated and his status immediately adjusted because of his wife and daughter's lawful permanent residency. I gather that you would agree that in this case prior era law applies. Yes, Your Honor. And which is, it seems to me, a critical distinction in this case and others. It does apply in this case. It is an important distinction because his case is, number one, once he's off U.S. soil, mooted as a matter of law. And, number two, under the U.S. Code, the provision cited in, they're not in our appellate brief because it wasn't at issue, but they're in the complaint before the district court and the TRO. So he cannot come back for either five or ten years as a matter of law. Because the new law would apply to his return, right? To the return. So he's stuck for ten years out of the country, even though his wife and daughter are allowed to be here. And all this case was about was just let him have his stay. Let him have his day in court. We don't care how the BIA rules, but just let him have his day in court because the moment this Court's mandate in the related case was issued, we don't know when it's going to issue. But when it issues, they stick him on a plane. And it's too late. So we had to go in early, which is why I gave advance notice and we wanted to tee it up and resolve it informally, but my client was put through the wringer. We were forced to litigate at length, unnecessarily wasting the district court's time, taxpayer time for U.S. attorneys' private resources, and, of course, most importantly, the stress and, you know, implications for our client who was in custody. And on that, we would submit unless the Court has any further questions. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Lay , Reinhardt, Thomas